IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DAVID DURHAM, RONALD GREGORY, RODNEY L. KOZYRA, JOHN C. RUST, JAN SMOLJAN, KENNETH R. TAYLOR, JAMES R. RUSSELL, KENNY WOOD ) ) ) ) ) | |
| Plaintiff, ) | Cause No. 2:13-CV-00300-JEM |
| ) v. ) ) | |
| LAKE COUNTY INDIANA, ) ) | |
| Defendant. ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, by counsel, respectfully submits this memorandum of law in support of its Motion for Summary Judgment.

### I.   Introduction

This case involves Fair Labor and Standards Act ("FLSA") overtime claims by four (4) District Supervisors and four (4) Foreman who supervise (or previously supervised) employees at the Lake County Highway Department. As explained below, Plaintiffs' case fails as a matter of law because all Plaintiffs (both Supervisors and Foreman) fall within the Executive Exemption set forth in 29 CFR 541.100 *et. seq.* and are therefore exempt from the overtime requirements they claim to be entitled to in their Complaint.

### II.   Statement of Material Facts Not in Dispute

This matter was brought by eight (8) individuals (collectively "Plaintiffs") who are or were employed by Defendant Lake County, Indiana ("Lake County") as either Supervisors or Foremen. (*See, generally*, Complaint, ECF-1.)

Plaintiff David Durham ("Durham") worked for Lake County from August 1975 until he retired in 2014. (Exhibit A, Deposition of David Durham ("Durham Dep.") 6:19-7:1, 8:13-14.) He was employed as a foreman from June 1996 until he retired. (*Id*. at 7:10-8:14.) After becoming a foreman, he was removed from membership in the union when "the supervisors and foremen got kicked out" of the union. (*Id*. at 9:14-18.)

Plaintiff Ronald Gregory ("Gregory") started working for Lake County in 1984. (Exhibit B, Deposition of Ronald Gregory ("Gregory Dep.") 8:13-15.) Gregory "went into management" as a supervisor in 1999. (*Id*. at 9:4.) Gregory was removed from membership in the union in 2006. (*Id*. at 10:1-9.) The reason provided to him and the other Plaintiffs was "that the Teamsters no longer wanted management positions in the" union. (*Id*. at 11:10-24.) After the filing of this lawsuit, Gregory was subsequently promoted to assistant superintendent in 2017. (*Id*. at 10:25-11:3.)

Plaintiff Rodney L. Kozyra ("Kozyra") worked for Lake County from 1974 until he retired in 2014. (Exhibit C, Deposition of Rodney L. Kozyra ("Kozyra Dep.") 7:1-3, 10:5-7.) He became a district foreman in 2008 at which time he left the union. (*Id*. at 7:11-14, 8:13-24, 9:23-25.)

Plaintiff John C. Rust ("Rust") began working for Lake County on February 2, 1987. (Exhibit D, Deposition of John C. Rust ("Rust Dep.") 8:23-9:1.) Rust became a foreman in 2006 and was promoted to supervisor thereafter on January 21, 2008. (*Id*. at 9:13-10:3.) He was removed from membership with the union when he became a supervisor. (*Id*. at 10:10-17.)

Plaintiff Jan Smoljan ("Smoljan") worked for Lake County as a supervisor from 2000 until he became superintendent in 2017. (Exhibit E, Deposition of Jan Smoljan ("Smoljan Dep.") 6:5-18.) He testified that his position as a supervisor was removed from the union in either 2001 or 2002. (*Id*. at 28:9-13.)

2

Plaintiff Kenneth R. Taylor ("Taylor") worked for Lake County as a supervisor from 2008 until he retired in 2017. (Exhibit F, Deposition of Kenneth R. Taylor ("Taylor Dep.") 6:3-8.) He initially began working for Lake County in 1980. (*Id*. at 6:12-15.) He gave up his membership in the union shortly after becoming a foreman. (*Id*. at 6:16-22.)

Plaintiff James R. Russell ("Russell") began working part time for Lake County in 1988. (Exhibit G, Deposition of James R. Russell ("Russell Dep.") 8:14-20.) He worked as a district foreman from 1996 until he became a supervisor in 2017. (*Id*. at 9:14-24.) He was removed from union membership in the same way as the other foremen and district supervisors. (*Id*. at 11:4-10.)

Plaintiff Kenny Wood ("Wood") began working for Lake County on June 6, 1988. (Exhibit H, Deposition of Kenny Wood ("Wood Dep.") 5:4-6.) He became a foreman on July 25, 2005. (*Id*. at 5:19-6:2.) Wood was removed from membership in the union when he became a foreman. (*Id*. at 23:19-21.)

Before January 1, 2002, Highway Department supervisors and foremen were both covered by the Collective Bargaining Agreement (CBA) between the Teamsters Union and Lake County and were compensated and paid overtime pursuant to the CBA. *Lake County Ordinance No. 1077C-8*.

In December 2001, the Lake County Council enacted Ordinance 1077C-8 which: a) removed Highway Dept. Supervisors and Foreman from the CBA effective 12/31/2001; and b) reclassified all Supervisors as "exempt" employees under the FLSA." *Id*. In 2006, recognizing the loss of overtime pay, Supervisors and Foremen receive significant raises: Supervisor base salaries increased from $42,224 to $46,945; Foremen base salaries increased from $35,235 to $43,992. (Durham Dep. 11:3-12:2.) On March 13, 2007, the Council repealed Ordinance No. 1077C-8 (and all amendments thereto) and incorporated and adopted the "Lake County Human Resources

Manual" as an ordinance of Lake County which provides that overtime eligibility for Supervisors and Foremen is to be determined by the FLSA. *Lake County Ordinance No. 1285B*.

In 2009, the Lake County Commissioners retained FLSA consultants Waggoner, Irwin & Scheele, Inc. ("WIS") from Muncie, Indiana to conduct a self-audit of County payroll procedures and develop an action plan to ensure compliance with FLSA rules for the computation of overtime for all Lake County employees. (Exhibit I, Declaration of Kent Irwin ("Irwin Decl.") ¶ 7; Exhibit J, Deposition of Marc Malczewski ("Malczewski Dep.") 55:4-15.) After interviewing the Highway Department officials and reviewing the then-current job descriptions, WIS prepared new FES job descriptions to match the duties and responsibilities performed in each position. (Irwin Decl. ¶ 9, Exhibit 1.)

In 2012, WIS was engaged to determine whether the Plaintiffs in this action were properly classified as exempt employees given the nature of their duties and their compensation. (*Id*. at ¶ 10.) WIS completed a compensation review of the Plaintiffs' positions to confirm that each of them met the salary requirements for the exemption. (*Id*. at ¶ 11.) Additionally, WIS propounded questionnaires to each and every person who later became a Plaintiff in this action to determine the primary duties and purposes of each position. (Irwin Decl. ¶ 11, Exhibit 2; Durham Dep. 27:1-24, Durham Exhibit 4; Gregory Dep. 75:13-76:9, Gregory Exhibit 16; Kozyra Dep. 27:15-19, Kozyra Exhibit 2; Rust Dep. 32:1-10, 34:6-9, Rust Exhibit 12; Smoljan Dep. 63:11-12, Smoljan Exhibit 29; Taylor 16:6-9, Taylor Exhibit 26; Russell Dep. 34:16-24, Russell Exhibit 7; Wood Dep. 29:21-30:4, Wood Exhibit 22.)

Specifically, each Plaintiff in this case was asked the following question: "Is your primary duty managing a recognized department or subdivision?" (*Id.*) Each Plaintiff answered "Yes". (*Id.*) The follow up question for each Plaintiff was "If you answered 'Yes'…, what percentage of your work time is spent engaged in duties that are not directly related to managing your department

4

or subdivision (such as performing similar duties to subordinates or standard duties that are non-policy making or non-supervisory?)" (*Id.*) Seven of the eight Plaintiffs answered, "not applicable" and the other left the question blank. (*Id.*)

After completing this review, WIS concluded that each of the Plaintiffs' positions fell under the FLSA's executive exemption. (Irwin Decl. ¶ 12.) This conclusion was provided to the County which then classified the Plaintiffs as exempt from overtime requirements. (*Id.*) Further, when Lake County re-classified Highway Department Supervisors and Foremen as "Exempt" employees under the FLSA, it also provided them with substantial salary increases as noted above. (Durham Dep. 11:20-12:2; Gregory Dep. 13:9-20, 14:17-20; Russell Dep. 12:24-13:18; Wood Dep. 23:22-25). All Plaintiffs were compensated at a rate greater than $684 per week. (*Id; see also* Kozyra Dep. 10:5-7; Rust Dep. 11:21-12:2.)

Plaintiffs' primary duties consist of managing a customarily-recognized department or subdivision of Lake County, including customarily and regularly directing the work of at least two or more other employees. (Durham Dep. 16:21-17:1, 29:23-30:1; Gregory Dep. 24:3-25:24, 38:21-239:5; Kozyra Dep. 13:13-14:4; Rust Dep. 15:17-20, 17:6-9; Smoljan Dep. 57:23-25; Taylor Dep. 18:9-21; Russell Dep. 23:7-24:6; Wood Dep. 11:18-25, 33:22-34:12; Malczewski Dep. 41:6-21.)

Further, Plaintiffs have the authority to discipline employees, and their suggestions or recommendations regarding discipline, hiring, firing, advancement, promotion, and changes in status of employees are given great weight. (Durham Dep. 30:2-10; Kozyra Dep. 28:4-29:18; Rust Dep 18:6-13, 30:1-7; Smoljan Dep. 64:24-65:16; Taylor Dep. 22:13-25; Russell Dep. 46:16-25; Wood Dep. 16:7-16; Malczewski Dep. 18:3-9, 19:17-24, 21:17-19; 23:15-24:8.) Finally, Plaintiffs control the schedules of bargaining unit employees and direct worksite operations. (Gregory Dep. 60:8-15; Kozyra Dep. 13:13-14:14; Rust Dep. 22:4-9; Smoljan Dep. 65:17-21; Taylor Dep. 7:20-25; Russell Dep. 29:18-23; Wood Dep. 37:6-17; Malczewski Dep. 37:2-9, 67:9-17; 93:9-24.)

### III.     Standards Governing Summary Judgment

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The moving party may meet its burden of demonstrating the absence of a triable issue by establishing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 325 (1986). The party opposing a well-supported summary judgment motion may not simply rest on the pleadings but must respond affirmatively with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, courts construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681 (7th Cir.1999). This presumption is especially true in FLSA cases as the employer, often the moving party, has the burden of establishing whether an employee fits within an exemption to the overtime pay requirements of the statute. *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 533 (7th Cir.1999) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97 (1974)). Nonetheless, the "mere scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.  If it is clear that plaintiffs will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

### IV.     Argument

#### A.  Governing law under the FLSA and its accompanying regulations

The Fair Labor Standards Act mandates that an employee who works more than forty hours in a workweek be paid, for the overtime hours worked, not less than one and one-half times the rate

at which the employee is normally paid. 29 U.S.C. § 207(a)(1). State and municipal employers must comply with this requirement, just as private employers are obligated by it. *DiGiore v. Ryan,* 172 F.3d 454, 460 (7th Cir.1999) (citing *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528 (1985)). However, FLSA overtime provisions do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

Congress did not set forth what defines an employee as executive. *See* 29 U.S.C. § 213(a)(1). To determine if an employee is an executive employee, the courts look to 29 C.F.R. § 541.119. These tests are commonly referred to as the "short tests," and they are designed to be applied to "high salaried" executive employees. *See Shaw v. Prentice Hall Computer Publishing, Inc.,* 151 F.3d 640, 642–43 (7th Cir.1998).

First, the employee must be "compensated on a salary basis of not less than $684 per week[1] exclusive of board, lodging, or other facilities." 29 C.F.R. § 541.119(a). *See also* 29 C.F.R. § 541 .214(a). This part of the inquiry is commonly referred to as the "salary test." The executive test further calls for a showing that (1) the employee's primary duty consists of the management of the enterprise or of one of its regular subdivisions and that (2) the employee customarily and regularly supervises the work of two or more other employees. 29 C.F.R. § 541.119(a); *see also DiGiore,* 172 F.3d 454, 460–61. These questions are referred to as the "duties test." The elements of both the salary test and the duties test must be met for Defendant to show that Plaintiffs are exempt employees. *Piscione,* 171 F.3d at 533–34.

---

[1] This amount increased on January 1, 2020, to $684 from its prior salary requirement of $455 per week. *See* 29 C.F.R. part 541.

7

B. **Plaintiffs are paid on a salary basis at a rate in excess of $684 per week. Therefore, Plaintiffs satisfy the salary basis test.**

Whether an employee is employed on a "salary basis" is determined by the following regulation:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a). Finally, the employee must be "compensated on a salary basis of not less than $684 per week[2] exclusive of board, lodging, or other facilities." 29 C.F.R. § 541.119(a).

Plaintiffs are paid a base salary in excess of the minimum $684 weekly amount required by the salary test. (Kozyra Dep. 10:5-7; Rust Dep. 11:21-12:2; Russell Dep. 12:24-13:18; Wood Dep. 23:22-25; Irwin Decl. ¶¶ 11-12.) Therefore, it is undisputed that Plaintiffs meet the salary test as a matter of law.

C. **Plaintiffs' actual duties performed satisfy the duties test as a matter of law.**

In addition to the salary test, 29 C.F.R. § 541.100 provides a "duties test" that has three elements. An employee who works in a "bona fide executive capacity" is defined as those employees:

> (1) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (2) Who customarily and regularly directs the work of two or more other employees; and
> (3) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

---

[2] As previously noted, this amount increased on January 1, 2020, to $684 from its earlier salary requirement of $455 per week. *See* 29 C.F.R. part 541.

29 C.F.R. § 541.100.

The regulations provide a set of factors to consider in determining whether an employee has management as his or her primary duty. 29 C.F.R. § 541.103. Supervising other employees, setting their schedules, and being involved in the hiring and disciplining of employees are all duties relevant to whether an employee engages in management duties and, in turn, whether the employee falls under the executive exemption. *See* 29 C.F.R. § 541.102 ("management" includes activities such as interviewing and selecting new employees, training employees, setting and adjusting their work schedules and pay, directing their work, and disciplining employees).

Plaintiffs admit that, as part of their duties as supervisors and foremen, they each supervise 2 or more employees. (Durham Dep. 16:21-17:1, 29:23-30:1; Gregory Dep. 24:321-25:24, 38:21-239:5; Kozyra Dep. 13:13-14:4; Rust Dep. 15:17-20, 17:6-9; Smoljan Dep. 57:23-25; Taylor Dep. 18:9-21; Russell Dep. 23:7-24:6; Wood Dep. 11:18-25, 33:22-34:12; Malczewski Dep. 41:6-21.) Therefore, it is undisputed that this element of the duties test is satisfied.

The two remaining elements required for the executive exemption are (1) whether Plaintiffs' primary duties involve management of a department; and (2) whether they have the authority to discipline employees and that their "suggestions or recommendations" as to discipline, hiring, firing, advancement, promotion and changes in status of employees are given sufficient weight. 29 C.F.R. § 541.100

    *i.*    *Plaintiffs' "primary duty" was the management of a recognized department.*

As to the question of management responsibilities, all the Plaintiffs completed the FLSA questionnaires prepared by WIS in which each of them admitted that their primary duty was to manage the assigned department. (Irwin Decl. ¶ 11, Exhibit 2; Durham Dep. 27:1-24, Durham Exhibit 4; Gregory Dep. 75:13-76:9, Gregory Exhibit 16; Kozyra Dep. 27:15-19, Kozyra Exhibit 2; Rust Dep. 32:1-10, 34:6-9, Rust Exhibit 12; Smoljan Dep. 63:11-12, Smoljan Exhibit 29; Taylor

9

16:6-9, Taylor Exhibit 26; Russell Dep. 34:16-24, Russell Exhibit 7; Wood Dep. 29:21-30:4, Wood Exhibit 22.) Specifically, each Plaintiff was asked the following question: "Is your primary duty managing a recognized department or subdivision?" (*Id.*) Each Plaintiff answered "Yes". (*Id.*) The follow up question for each Plaintiff was "If you answered 'Yes'…, what percentage of your work time is spent engaged in duties that are not directly related to managing your department or subdivision (such as performing similar duties to subordinates or standard duties that are non-policy making or non-supervisory?)" (*Id.*) Seven of the eight Plaintiffs answered, "not applicable" and the other left the question blank. (*Id.*)

These responses show that Plaintiffs admitted to performing only exempt work and that they functioned as executives. Indeed, even if Plaintiffs performed some manual labor alongside the union employees they supervised, this is insufficient to contradict the finding that their primary duty was supervision and management of those employees. *See* 29 C.F.R. § 541.700(b); *Brown v. Aleris Specification Alloys, Inc.*, No. 3:14-CV-41, 2016 WL 1183207, at *5 (N.D. Ind. Mar. 28, 2016); *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982); *York v. City of Wichita Falls, Kan.,* 944 F.2d 236, 242 (5th Cir.1991); *Murray v. Stuckey's Inc.*, 939 F.2d 614, 618 (8th Cir. 1991); *Keller v. City of Columbus, Ind.*, 778 F. Supp. 1480, 1489 (S.D. Ind. 1991).

  ii. *Plaintiffs' recommendations and suggestions were accorded sufficient weight.*

As to the question of whether Plaintiffs played sufficient roles in the imposition of discipline or advancement to qualify for the exemption, Plaintiffs provided input into issued discipline and made recommendations as to advancement for members of the collective bargaining unit. (Durham Dep. 30:2-10; Kozyra Dep. 28:4-29:18; Rust Dep 18:6-13, 30:1-7; Smoljan Dep. 64:24-65:16; Taylor Dep. 22:13-25; Russell Dep. 46:16-25; Wood Dep. 16:7-16; Malczewski Dep. 18:3-9,

19:17-24, 21:17-19, 23:15-24:8, 50:7-17, 92:5-10.)   Plaintiffs also had input into resolving grievances. (Malczewski Dep. 47:11-48:4.)

Importantly, Plaintiffs were removed from the bargaining unit—a decision made because of complaints by the union that they functioned as supervisors issuing discipline.  (Gregory Dep. 11:14-24.)  Indeed, Plaintiffs, as supervisors and foremen, controlled the schedules of bargaining unit employees and directed worksite operations.  (Gregory Dep.  60:8-15; Kozyra Dep. 13:13-14:14; Rust Dep. 22:4-9; Smoljan Dep. 65:17-21; Taylor Dep. 7:20-25; Russell Dep. 29:18-23; Wood Dep. 37:6-17; Malczewski Dep. 37:2-9, 67:9-17, 83:24-84:7, 93:9-24.)

Further, the employees Plaintiffs supervised could earn more money depending on the types of equipment they operated and the hours they worked. (Malczewski Dep. 23:15-24:8, 93:9-94:1.) It would be up to the Plaintiffs, as foreman and supervisors, to make recommendations as to any employee increases based on the information about equipment operated by employees. (Malczewski Dep. 23:15-24:8.) As such, Plaintiffs had input not only into discipline but into pay increases based upon in-grade promotions.  Indeed, numerous courts have found that the recommendations of supervisors in unionized environments were given particular weight where, as here, the supervisor could initiate progressive disciplinary procedures and/or where the company relied on suggestions about promotions or the retention of probationary employees. *Brown v. Aleris Specification Alloys, Inc.*, No. 3:14-CV-41, 2016 WL 1183207, at *8 (N.D. Ind. Mar. 28, 2016). *See also, e.g.*, *Beauchamp v. Flex-N-Gate LLC,* 357 F. Supp. 2d 1010, 1016 (E.D. Mich. 2005); *Scott v. SSP America, Inc.*, 2011 WL 1204406, *15 (E.D.N.Y. Mar. 29, 2011); *Garrison v. ConAgra Foods Packaged Foods, LLC*, 2015 WL 366431, at *10 (E.D. Ark. Jan. 6, 2015).

Based on the foregoing, Lake County has shown as a matter of law that Plaintiffs meet the requirements of both the salary test and the duties test for the executive exemption from overtime as put forth by 29 C.F.R. § 541.100 and their claims should be dismissed.

### D. Even if this Court concludes that there are questions of fact as to application of the duties test, there is no doubt Lake County acted in good faith and reasonably believed Plaintiffs were exempt because the County retained experienced outside professionals to assist in making the decisions about whether the Plaintiffs were properly classified as exempt.

Under the enforcement provisions of the FLSA, "any employer who violates the provisions of [Sec. 207 (on overtime)] shall be liable to the employee or employees affected ... in the amount of their unpaid overtime compensation ... and in an additional amount as liquidated damages." 29 U.S.C. 216(b). This 'additional amount' takes "the form of doubling the award for unpaid overtime compensation ..." *Id.* The double damages are designed in part to compensate for violations which may not be easily apparent. *Overnight Motor Trans. Co. v. Missel,* 316 U.S. 572, 583–584 (1942); *Walton v. United Consumers Club, Inc.,* 786 F.2d 303,312 (7th Cir.1986). However, the Portal–to–Portal Act, 29 U.S.C. § 260, provides a limited defense to § 216:

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 216 of this title.

As such, "a district judge can in his discretion excuse the defendant from paying liquidated damages if he finds that the defendant was acting in good faith and reasonably believed its conduct was lawful when it violated the Act." *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1223 (7th Cir.1995). The burden is on the employer to prove his good faith and reasonable grounds. *Walton,* 786 F.2d at 310.

An employer's proof that its officials attended seminars regarding the FLSA, reviewed the law, and consulted with counsel can establish reasonable good faith. *See, e.g., Lee v. Coahoma Co., Miss.,* 937 F.2d 220, 227 (5th Cir.1991); *Pautlitz v. City of Naperville*, 874 F.Supp. 833, 835 (N.D.Ill.1994).* However, a showing that the employer received advice on the specific compliance issue in question, rather than merely seeking advice about the statute in general, is usually required. *Kinney,* 994 F.2d at 12 (*citing Hultgren v. County of Lancaster,* 913 F.2d 498, 509 (8th Cir.1990)). A decision that is made openly and justified in public is more likely to pass the "good faith" test as well. *Walton,* 786 F.2d at 312.

Here, the County did exactly what the FLSA requires in order to take advantage of the good faith defense. It sought the advice of counsel and hired outside consultants to review Plaintiffs' job descriptions so as to receive compliance advice specific to Plaintiffs' status under the FLSA. (*See, generally*, Irwin Decl.) In 2009, the Commissioners engaged FLSA consultants Waggoner, Irwin & Scheele, Inc. ("WIS") from Muncie, Indiana, to conduct a self-audit of County payroll procedures and develop an action plan to ensure compliance with FLSA rules for the computation of overtime for all Lake County employees. (Irwin Decl. ¶7.) After interviewing the Highway Department officials and reviewing the then-current job descriptions, WIS prepared new FES job descriptions to match the duties and responsibilities performed in each position. (Irwin Decl. ¶ 9, Exhibit 1.)

In 2012, WIS conducted an independent FLSA review of positions at the Lake County Highway Department, including those held by the Plaintiffs: Supervisor, Foreman, Bridge Foreman, and Mechanical Supervisor. (Irwin Decl. ¶¶ 10.) WIS completed a compensation review of the Plaintiffs' positions to confirm that each of them met the salary requirements for the exemption as well as propounding questionnaires to determine the primary duties and purposes of each position. (Irwin Decl. ¶ 11, Exhibit 2.) After completing this review, WIS concluded that

13

each of the Plaintiffs' positions fell under the FLSA's executive exemption. (Irwin Decl. ¶ 12.) This conclusion was provided to the County which then classified the Plaintiffs as exempt from overtime requirements. (*Id.*)

Therefore, even if Plaintiffs are found by the Court to have a right to a trial on their overtime claims, a finding that Lake County met its burden to demonstrate it acted in good faith and reasonably believed it complied with the FLSA in determining that Plaintiffs were properly classed as exempt is required. See *Doden v. Plainfield Fire Prot. Dist.*, No. 94 C 6294, 1995 WL 699719, at *3 (N.D. Ill. Nov. 24, 1995)(finding good faith and reasonable belief based on Defendants' reliance on the advice of counsel, FLSA handbooks, and discussions with other fire protection districts); *Quirk v. Baltimore Cty., Md.*, 895 F. Supp. 773, 788 (D. Md. 1995)(finding good faith where county consulted legal counsel and personnel specialists in neighboring jurisdictions).

## V.   Conclusion

For all the above reasons, Defendant respectfully moves the Court to grant summary judgment in its favor and against Plaintiffs, to dismiss all claims, and to grant all other relief deemed just and proper by the Court.

FROST BROWN TODD LLC

By: */s/ Anthony W. Overholt*
Anthony W. Overholt, 16481-49

Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of September, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

R. Brian Woodward
Woodward Law Offices LLP
200 E. 90th Drive
Merrillville, IN  46410

Angela M. Jones
The Law Office of Angela M. Jones, LLC
8321 Wicker Avenue
St. John, IN 46373

                                              */s/Anthony W. Overholt*
                                              Anthony W. Overholt

FROST BROWN TODD LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
317-237-3800
317-237-3900 (Fax)
aoverholt@fbtlaw.com

4820-6619-3657v1