**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| DAVID DURHAM, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-300-JEM |
| | ) | |
| LAKE COUNTY, INDIANA, | ) | |
| Defendant. | | |

**OPINION AND ORDER**

This matter is before the Court on Lake County's Motion for Summary Judgment [DE 105] and Motion for Summary Judgment [DE 107] of Plaintiff, both filed on September 3, 2021.

**I.      Procedural Background**

On August 29, 2013, Plaintiffs filed their Complaint alleging Defendant had violated the Fair Labor Standards Act ("FLSA") by failing to pay them time and one-half for hours they worked in excess of forty hours per week. Defendant answered that each Plaintiff was an exempt employee.

On September 3, 2021, the Defendant filed its motion for summary judgment and Plaintiffs filed their motion for partial summary judgment on Defendant's affirmative defense that the Plaintiffs were exempt employees. On October 15, 2021, both parties filed responses, and both filed replies on October 29, 2021.

Defendant filed motions to strike Plaintiffs' Designation of Material Facts [DE 116] and to Preclude the Testimony of Plaintiffs' Proposed Expert Witness [DE 118] on October 15, 2021, Plaintiffs filed their responses on October 29, 2021, and Defendant filed its replies on November 8, 2021.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

1

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.     Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted). To demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc*., 293 F.3d 402, 404 (7th Cir.

2002). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

### III.   Undisputed Material Facts

Each of the eight plaintiffs are or were employed by Defendant. Each had the job title of supervisor or foreman for some period of their employment[1]. Each Plaintiff left the Teamsters Union around the time they became a supervisor or foreman because the Teamsters Union did not want management employees to be members of the Union. In 2006, Highway Department supervisors' base salaries were increased from $42,224 to $46,945 and foremen base salaries were increased from $35,235 to $43,992.

Prior to January 1, 2002, supervisors and foreman in the Lake County Highway Department were covered by the Collective Bargaining Agreement ("CBA") between Lake County and the Teamsters Union and were paid overtime pursuant to the terms of the CBA. Effective December 31, 2001, the Lake County Council enacted Ordinance 1077C-8, which removed supervisor and foreman roles from the CBA and reclassified them as "exempt" employees under the FLSA. On March 13, 2007, the Lake County Council repealed Ordinance 1077C-8 and adopted the "Lake

---

[1] Plaintiff Durham was employed from August 1975 until he retired in 2014, he was a foreman from June 1996. Plaintiff Gregory has been employed since 1984 and became a supervisor in 1999 and an assistant superintendent in 2017. Plaintiff Kozyra was employed from 1974 until he retired in 2014, he was a foreman in 2008. Plaintiff Rust has been employed since 1987, became a foreman in 2006, and a supervisor in January 2008. Plaintiff Smoljan has been employed since 2000, he was supervisor from 2000 until 2017, when he became a superintendent. Plaintiff Taylor was employed as a supervisor from 2008 until he retired in 2017. Plaintiff Russell has been employed since 1988, and became a foreman in 1996, and a supervisor in 2017. Plaintiff Wood has been employed since 1988 and became a foreman in July 2005.

County Human Resources Manual" as an ordinance. The Lake County Human Resources Manual provides that overtime eligibility for supervisors and foremen is to be determined consistent with the FLSA.

As supervisors or foreman, Plaintiffs' salaries exceeded the FLSA minimum for exempt employees. Plaintiffs, at all relevant times, each supervised 2 or more employees on a regular basis.

Defendant had written job descriptions for foreman and supervisor roles although none of the Plaintiffs recalled ever seeing them. In 2009, the foreman and supervisor job descriptions were updated, following review by FLSA consultants. Def. Ex. J at 3 [DE 105-9]. The job descriptions were in conformance with the duties being performed by the employees. *Id*. Copies of the foremen job descriptions dated November 2012 set forth the job duties of foremen as:

> Supervises and directs assigned personnel, including making work assignments, coordinating job responsibilities, and maintaining employee records, such as payroll, and recording time, materials, and equipment usage as required.

> Assists in directing construction projects, including planning, assigning, and dispatching work crews and equipment on a daily basis according to plans, and monitoring project sites to complete scheduled work assignments. Coordinates job responsibilities with other District Supervisors and/or equipment usage.

> Assists with monitoring and ensuring proper use, care and maintenance of Department equipment and vehicles, ensuring safety of Department employees.

> Assists in investigating district's roads and right-of-ways for needed maintenance and repairs, and/or schedules repairs or reports to appropriate personnel as necessary.

> Assists with inspecting department equipment for repairs and maintenance; makes recommendations for replacement and/or schedules equipment and vehicles for maintenance; and orders needed parts and supplies.

> Transports personnel to/from various job sites and picks up parts for vehicles/equipment as needed.

> Receives and investigates County road complaints from citizens and initiates

4

appropriate action to resolve valid complaints.

Assists with maintaining inventory of department equipment and supplies and requisitions supplies as needed.

May be required to perform duties of District Supervisor in his/her absence.

Servers on 24-hour call for emergency situations.

Performs related duties as assigned.

Def. Ex. I at 7-15 [DE 105-9]; Pls. Ex. 12 at 104-07 [DE 111-1]. District Supervisor job descriptions dated November 2012 set forth the job duties as:

Oversees daily and long-term goals and needs of assigned district, and supervises and directs assigned personnel. including making work assignments, coordinating job responsibilities, and maintaining employee records, such as payroll, and recording time, materials, and equipment usage as required.

Directs construction projects, including planning, assigning, and dispatching work crews and equipment on a daily basis according to plans, and monitoring project sites to complete scheduled work assignments. Coordinates job responsibilities with other District Supervisors and/or equipment usage.

Monitors and ensures proper use, care and maintenance of Department equipment and vehicles, ensuring safety of Department employees.

Investigates district's roads and right-of-ways for needed maintenance and repairs, and/or schedules repairs or reports to appropriate personnel as necessary.

Inspects department equipment for repairs and maintenance; makes recommendations for replacement and/or schedules equipment and vehicles for maintenance; and orders needed parts and supplies.

Receives and investigates County road complaints from citizens and initiates appropriate action to resolve valid complaints.

Maintains inventory of department equipment and supplies and requisitions supplies as needed.

Serves on 24-hour call for emergency situations.

Performs related duties as assigned.

5

Def. Ex. I at 16-19 [DE 105-9]. Finally, Mechanical Supervisor job descriptions dated November

2012 set forth the job duties as:

> Manages and schedules operational heavy equipment repair facility, serving as technical and safety advisor for mechanical staff providing capabilities, operations, training and safety procedures for equipment within the Department's inventory.

> Creates specifications, budgeting and purchasing of necessary supplies and equipment according to purchasing regulations and laws. Processes payroll for assigned staff.

> Serves as Building Manager and Maintenance Coordinator for Crown Point and Lowell facilities.

> Manages special projects, such as rental equipment, disposal of unwanted items or materials, or improvements to existing equipment or structures.

> Oversees and supervises assigned staff, including planning/delegating work assignments, providing training, monitoring/evaluating performance, and ensuring adherence to instructions.

> Schedules preventive maintenance on department equipment, tools and vehicles according to warranties, mileage and use, such as oil and filter changes, and tune-ups.

> Oversees repair of department equipment, such as electrical repair, brake jobs, tune-ups, engine repair, and exhaust work. Explores new procedures or products that may cut costs.

> Assists with purchasing equipment and vehicles, including preparing specifications, researching available items, soliciting and reviewing bids, and making recommendations regarding selection.

> Receives messages regarding breakdowns, and dispatches Mechanics to sites. Prepares work orders, and may assist in analyzing equipment und vehicle malfunction, including observing, listening and identifying problem source, and advising personnel regarding solution.

> Maintains detailed records of maintenance and repair activity, including work description, purls und cost. Maintains daily fuel and oil usage records for department vehicles and equipment.

6

Orders parts and supplies, including preparing specifications and soliciting price quotes according to state and County procurement requirements.

Performs related duties as assigned.

Def. Ex. I at 20-23 [DE 105-9].

As part of a 2012 review by the FLSA consultants, each plaintiff was given a questionnaire about his job duties. Plaintiffs all answered "Yes" to the question "Is your primary duty managing a recognized department or subdivision?" Def. Ex. I at 25, 29, 33, 37, 41, 45, 49, 53 [DE 105-9]. Each answered "NA" (except one who did not answer) to the question "If you answered 'Yes'…what percentage of your work time is spent engaged in duties that are not directly related to managing your department or subdivision (such as performing similar duties to subordinates or standard duties that are on-policy making or non-supervisory)?" *Id*. Each Plaintiff (except Plaintiff Durham) answered "Yes" to the question "Do you evaluate employees for purposes of recommendations on promotions or other changes in status." *Id.*at 26, 30, 34, 38, 42, 46, 50, 54. Each also indicated that he did not make the final decisions on those matters. *Id*. Each answered "Yes" to the question "Do you assign work to employees?" *Id*.

Each Plaintiff answered "No" to the questions: "Do you interview, select, and hire employees?", "Do you interview and made recommendations for hiring new employees?", "Do you recommend compensation levels, or hours worked, for employees?", "Do you resolve employee complaints, grievances, and disciplinary action?", and "[D]o you have the authority to discipline and terminate?" *Id.* at 26, 27, 30, 31, 34, 35, 38, 39, 42, 43, 46, 47, 50, 51, 54, 55. They also answered "No" to the question "Does your position allow you to make independent policy decisions, free from immediate supervision, regarding matters of significant importance to your employer?" *Id.* at 27, 31, 35, 39, 43, 47, 51, 55, and identified the highest-level policy decision he

was authorized to make as "Daily Job Assignments." *Id*. Finally, each plaintiff identified particular job duties which constituted the "greatest percentage of their time" but did not specify what percentage any took. Those job duties included road maintenance, snow removal, tree removal, bridge maintenance, sign shop, and road construction. None listed management type duties in those duties *Id*. at 26, 30, 34, 38, 42, 46, 50, and 54. Based on these answers to the questionnaires, the Defendant's FLSA consultant concluded each Plaintiff was an exempt employee. Def. Ex. J at 4 [DE 105-9].

Plaintiff Smoljan testified that he spent greater than 80% of his time performing the same job duties as the union workers. Def. Ex. E at 86 [DE 105-5]. Plaintiff Durham testified that he worked alongside his bridge crew. Def. Ex. A at 17-18 [DE 105-1]. Plaintiff Gregory testified that he spent 80% of his time doing physical labor. Def. Ex. B at 72 [DE 105-2]. Plaintiff Russell testified that he was doing "everything that what they were going, usually in the hole." Def. Ex. G at 30 [DE 105-7]. All the plaintiffs testified that they worked side-by-side with the union employees. Def. Ex. H at 27-28 [DE 105-8] (Woods); Def. Ex. D at 50-52 [DE 105-4] (Rust); Def. Ex. C at 21 [DE 105-3] (Kozyra); Def. Ex. E at 36 [DE 105-5] (Smoljan); Def. Ex. A at 27, 29 [DE 105-1] (Durham); Def. Ex. G at 21-22, 31-32 [DE 105-7] (Russell); Def. Ex. B at 37-38, 40-41 [DE 105-2] (Gregory). Plaintiff Wood testified that as District 3 supervisor he did spend more time driving from one site to another as he supervised 3 crews, and less time doing the physical work. Def. Ex. H at 27-28 [DE 108-8].

Plaintiffs had no input into the budget or major purchases of material or equipment, a fact confirmed by Haberkorn, Pls. Ex. 4 at 22, 24 [DE 111-1], Malczewski, Def. Ex. J at 40, 52 [DE 105-10], and Bielak, Pls. Ex. 1 at 34 [DE 111-1].

8

## IV.    Disputed Material Facts

There are material factual disputes as to the extent of Plaintiffs' authority to make employment decisions and direct workplace operations, which are key elements of whether Plaintiffs managed a customarily recognized department and the work of two or more other employees. Both parties identified evidence which they identified as supporting their conclusion. It is largely the conclusion to be drawn from the facts which the parties dispute, but there are instances where potentially contradictory facts were cited, and they are reflected herein.

## V.    Analysis

Defendant argues that it is entitled to summary judgment because Plaintiffs have not presented evidence that they are not exempt executive employees for whom no overtime pay is due. Plaintiffs argue that they are entitled to summary judgment on Defendant's affirmative defense that Plaintiffs are executive employees because Defendant has not presented evidence that their job duties included a sufficient amount of supervisory authority and functions to make them exempt.

The FLSA provides that non-exempt employees are to be paid time and one half for hours worked in excess of forty hours per work week. 29 U.S.C. § 207(a)(1). Exempt employees are not entitled to be paid overtime pay. 29 U.S.C. § 213. Exempt employees include so-called "executive employees," defined as "any employee employed in a bona fide executive, administrative, or professional capacity …" 29 U.S.C.S. § 213(a)(1). A bona fide executive capacity employee is one who is:

> (1) Compensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week…; (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly directs the work of two or more other

employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. 541.100(a). The parties agree that the Plaintiffs were paid compensation in excess of the requisite salary level and that the Plaintiffs supervised two or more other employees. The parties disagree as to whether the Plaintiffs' primary duties were management of a recognized department or subdivision[2], whether they had the authority to hire and whether their input into changes of status of other employees were given particular weight, and whether their primary duties were exempt activities.

    A.    <u>Management</u>

Management is defined in the relevant sections as including, but not limited to:

activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. A "customarily recognized department or subdivision" is

intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. A customarily recognized department or subdivision must have a

---

[2] Defendant argues that the Plaintiffs' answers to the FLSA consultant questionnaires constitute dispositive admissions. That argument is addressed below.

> permanent status and a continuing function. For example, a large employer's human resources department might have subdivisions for labor relations, pensions and other benefits, equal employment opportunity, and personnel management, each of which has a permanent status and function.

29 C.F.R. § 541.103(a). On the FLSA consultant questionnaire, Plaintiffs all answered that they managed a department and that they managed 2 or more employees. The parties differ as to whether Plaintiffs' job duties amounted to management, in particular whether the Plaintiffs engaged sufficiently in the types of duties described in the applicable regulations. In large part, the differences relate to Plaintiffs' authority in employee management and worksite operations.

      i.      Weight given to Employee's input

In determining whether particular weight is given to an employee's suggestions and recommendations in the workplace, factors to be considered include, but are not limited to:

> whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105.

Defendant argues that Plaintiffs each testified during their depositions that they had the authority to discipline employees and that their suggestions or recommendations regarding discipline, hiring, firing, advancement, promotion, and changes in status were given great weight. Plaintiff Durham testified that "if someone was unsafe, and needed to be written up, I would write them up, send them in, and . . . or no, I would take it in and go see Joanne Haberkorn. She would

11

get them wrote up and then I'd have to initial what they wrote up before it got turned in to the superintendent." Def. Ex. A at 30 [DE 105-1]. Plaintiff Kozyra testified that he would discuss discipline if an employee cussed at him, for example, with his supervisor, or the district superintendent. He denied that he made any recommendation but stated that he advised his supervisors of the situation. Def. Ex. C at 28-29 [DE 105-3]. Plaintiff Rust testified that written reprimands "have to come from the head office," that "they put my name on them" and that he saw them before they were given to the employees. Def. Ex. D at 18 [DE 105-4]. He further testified that "I have to sign off on every one of them. I don't agree with it, but what are you going to do if your boss asks you to sign it?" *Id.* at 30. Plaintiff Smoljan confirmed that he circled yes on the questionnaire saying he made recommendations about employee status changes, but that he did not make the final decisions and that he circled no on the questionnaire saying he did not discipline employees. Def. Ex. E at 64-65 [DE 105-5]. Plaintiff Taylor testified that a disciplinary record shown him by Defendant's attorney during his deposition had his initials on it but that he did not remember it. Def. Ex. F at 22 [DE 105-6]. Plaintiff Russell testified that he did not recommend discipline, but he did explain to the superintendent what happened on a daily basis and would have had to decide what to tell the superintendent about any employee's behavior. Def. Ex. G at 46 [DE 105-7]. Plaintiff Wood testified that if an employee consistently violated the safety rules, his role would have been to tell a supervisor, so the supervisor was aware. Def. Ex. H at 16 [DE 105-8]. Finally, Marc Malczewski, the Superintendent of the Highway Department from 1993 through 2017, testified that supervisors or foremen would come to him and relay problems with a certain employee, and it would be up to Malczewski to relay that information to the Board of County Commissioners with a recommendation to terminate. Def. Ex. J at 18 [DE 105-10]. Malczewski

testified that a foreman or supervisor could go around him and make a recommendation directly to the Board regarding termination but that it was not listed as part of their job descriptions. *Id*. at 21-22. Malczewski also testified that a foreman or supervisor would report any infractions to him, and he would forward them to the union. *Id.* at 27-29. Malczewski further testified that a foreman or supervisor would advise him if an employee was eligible for a change of job classification (i.e., from single to tandem axle driver) and Malczewski would decide whether to recommend that change. *Id*. at 23-44. Steven Bielak, a clerk with the Highway Department since 2010, testified that supervisors or foreman would initiate a grievance by reporting work rule violations which would then be acted on by the superintendent or assistant superintendent pursuant to the CBA. Pls. Ex. 1 at 31-32 [DE 111-1].

Defendant argues that all plaintiffs were involved in the employee hiring, firing, and changes in status but does not cite to any testimony of the plaintiffs or Malczewski that any Plaintiffs had any role in hiring or firing of employees, or advancement, promotion, and changes in status other than as noted above. Plaintiffs argue that they had no role in employee grievances, other than perhaps initiating them, and that assertion is borne out by the cited testimony.

Plaintiffs assert that none of them ever participated in interviewing any prospective employees, and, in addition to their own testimony, point to the testimony of various Lake County Highway Department employees and officers. In particular, Malczewski testified that he interviewed union employees and told the Board of Commissioners whether he thought the person was qualified, the Board then made the decision whether to hire the applicant.  Def. Ex. J at 13-17 [DE 105-10]. The Board made decisions of when to fire an employee, based on Malczewski's recommendation on information from a foreman or supervisor. *Id*. at 18-20. Neither a foreman nor

13

a supervisor could unilaterally fire an employee. *Id*. at 21. Haberkorn, the retired chief deputy of the Lake County Highway Department testified that to her knowledge, none of the Plaintiffs had any role in setting compensation for any employee, hiring or firing employees, or ordering materials. Pls. Ex. 4 at 18-21, 24 [DE 111-1]. Bielak testified that he had never seen supervisors or foremen interview prospective employees. Pls. Ex. 1 at 28 [DE 111-1].

Review of the deposition testimony of Plaintiffs, as well as other Lake County Highway Department employees and officials, reveals no evidence that Plaintiffs had any authority to hire or fire employees, any significant influence in decisions as to the advancement, promotion or change in status of employees, or any role in disciplining employees other than as fact finders and reporters; they exercised no discretion in that role. There is no evidence from which to conclude that the Plaintiffs' input into decisions about hiring, firing, promotion, change in status, or discipline was given great weight.

ii.   Primary Duties

The issue of an employee who performs both exempt and nonexempt work is addressed in § 541.106:

> (**a**) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 **are** otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.
> ...

14

(c) In contrast, a relief supervisor or working supervisor whose primary duty is performing nonexempt work on the production line in a manufacturing plant does not become exempt merely because the nonexempt production line employee occasionally has some responsibility for directing the work of other nonexempt production line employees when, for example, the exempt supervisor is unavailable. Similarly, an employee whose primary duty is to work as an electrician is not an exempt executive even if the employee also directs the work of other employees on the job site, orders parts and materials for the job, and handles requests from the prime contractor.

29 C.F.R. § 541.106. For purposes of exempt status, the "primary duty" analysis is:

(a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

(c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700.

Whether employees meet the duties test is a fact intensive inquiry. *See Schaefer-LaRose v.*

15

*Eli Lilly & Co*., 679 F.3d 560, 572 (7th Cir. 2012); *Grass v. Demar Servs*., 2104 U.S. Dist. LEXIS
83414; 2014 W.L. 2773027 at *21 (S.D. Ind. June 19, 2014).

Plaintiffs state that they did not have the authority to direct worksite operations.
Malczewski testified that a foreman or supervisor would have been the person to determine, for
example, what grade of stone to use, or how much stone to put down. Def. Ex. J at 48 [DE 105-
10]. Bielak testified that at a staff meeting, a supervisor (and sometime a foreman, if present)
would be asked by the superintendent what their worst roads were, and a list would be compiled
and that list would then be forwarded to the Board which made the final decision. Pls. Ex 1 at 24-
26 [DE 111-1].

Malczewski and each Plaintiff testified that Plaintiffs were responsible for assigning daily
tasks to each employee. This is consistent with the FLSA questionnaire answers.

Defendant has not presented evidence that Plaintiffs set job duties of workers or decided
on project priorities or scheduling, although there is evidence that Plaintiffs controlled the daily
work assignments of employees within the job duties established by the union and the project
prioritization set by the Board. There is evidence that Plaintiffs had discretion in managing certain
daily work activities, as in the appropriate materials to use for a job. There is also evidence that
the majority of Plaintiffs' time was spent performing manual labor along with other, union,
workers. There is not sufficient evidence to conclude that the Plaintiffs had management authority
beyond those parameters.

B.   Unanswered Questions

Whether an employee is exempt from the payment of overtime pay is narrowly construed
against the employer and this classification must be confined to positions that are "plainly and

16

unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc*., 361 U.S. 388, 392 (1960); *Roe-Midgett v. CC Servcs., Inc.,* 512 F.3d 865, 869 (7th Cir. 2008). Accordingly, questions before the Court are Plaintiffs' exempt duties as compared to their other duties, the amount of time spent performing exempt work, the Plaintiffs' relative freedom from direct supervision and the relationship between the Plaintiffs' salary and the pay of other employees for the kind of nonexempt work performed by Plaintiffs. 29 C.F.R. § 541.700.

        i.     Relative Importance of Exempt Duties

Defendant argues that Plaintiffs' exempt work was more important than their non-exempt work because Plaintiffs controlled the schedules of the union employees and directed worksite operations, and they were on call twenty-four hours a day to handle emergencies and "to exercise their managerial discretion." The evidence addressing scheduling of union employees and worksite operations was discussed above, and, on the whole, the role of Plaintiffs in either of those aspects of management was limited by the constraints of the CBA and Board policies. The sole piece of evidence cited by Defendant for the proposition that Plaintiffs were available twenty-four hours a day for their managerial discretion was testimony by Jan Smoljan. However, rather than express that Plaintiffs were available twenty-four hours a day for *managerial* discretion, Smoljan testified that they were available to respond to emergencies like downed trees, flooding, and weather-related damage -- labor, rather than management, tasks. Def. Ex. E at 54-55 [DE 105-5]. Plaintiffs argue that "without question the non-exempt work performed by the Plaintiffs were more important to the successful operation of the Highway Department than their managerial duties." Neither party sufficiently supported their contrary conclusions as to the relative importance of Plaintiffs' non-exempt duties and their exempt duties.

ii.    Level of Supervision of Plaintiffs

One of the factors to be considered in determining whether Plaintiffs' primary duties were management is how much direct supervision Plaintiffs were subject to, but neither party presents argument about the level of supervision. 29 C.F.R. § 541.700. According to the organizational structure of Defendant, Plaintiffs who are foremen may have been supervised by supervisors and/or Superintendents, and Plaintiffs who are supervisors may have been supervised by Superintendents, but neither party adequately addressed this issue.

iii.    Relative Payscale

Likewise, neither party addressed the issue of the relative payscale of Plaintiffs and non-exempt employees for the non-exempt work performed by Plaintiffs, another factor in the analysis of whether Plaintiffs' management duties were their primary duties. 29 C.F.R. § 541.700. The sole evidence cited about pay was that in 2006 the base salary for supervisors was increased from $42,224 to $46,945 and for foremen was increased from $35,235 to $43,992.

In the absence of all relevant evidence, summary judgment on the issue of whether the Plaintiffs are exempt employees would be improper. There is evidence that Plaintiffs have some management duties, in particular the assignment of daily duties of other employees and limited decision making relative to materials to use for any particular job, and a nominal role in reporting misconduct, both of which weigh in favor of them being exempt, however, there is no evidence they have any role in hiring, firing, pay rates, or level of discipline of other employees, or the prioritization of projects, which would weigh against them being exempt. The lack of evidence as to the relative importance of their exempt activities, their relative payscale, and their level of supervision are all crucial factors in the determination of exempt status. A jury could interpret the

18

evidence in favor of either Plaintiffs or Defendant on the issue of whether Plaintiffs' duties were sufficiently managerial to properly classify them as exempt.

### C.    Questionnaire Answers as Admissions

Defendant argues that Plaintiffs' answers to the FLSA consultant questionnaires (in particular, that they managed a recognized department) should be treated by this Court as admissions. Plaintiffs, relying primarily on *Kohler v. Leslie Hindman, Inc*., 80 F.3d 1181 (7th Cir. 1995), respond that such an answer is not a judicial admission, and even if it is deemed to be an admission, it is a legal conclusion, and therefore not dispositive. A judicial admission is a statement made in the pending lawsuit, and not one made in another lawsuit or some other context. *Kohler*, 80 F.3d at 1185. Any other statement can be evidence. *See id*. ("Ms. Hindman's statement in her state court suit is not even competent evidence in this case because it states a legal conclusion and is not the admission of a fact that could be dispositive."). This Court finds that the questionnaire answers are, like Plaintiffs' testimony in their depositions and the testimony of other witnesses, evidence. As such, they could constitute evidentiary admissions. However, since the question asked for the legal conclusion at issue, they are not, in and of themselves, dispositive of the legal issue of whether Plaintiffs' job duties constituted management of a recognized department.

### D.    Defendant's Motion to Strike and Preclude

Defendant also filed a motion to strike Plaintiffs' Designation of Material Facts. The version of Northern District of Indiana Local Rule 56-1[3] in effect at the time this Motion was filed

---

[3] Northern District of Indiana Local Rule 56-1 was amended effective February 25, 2022.

required the moving party to include with its motion for summary judgment a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56-1(a). In response, the opposing party is obligated to file a "'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed." N.D. Ind. L.R. 56-1(b)(2). Both parties included factual analysis with record citations within their briefing, although neither of them included a properly named section. Plaintiffs also filed a separate pleading entitled a Designation of Material Facts [DE 109]. Defendant moved to strike that Designation, arguing that it did not comply with Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1. Plaintiffs respond by pointing out that Defendant quoted the incorrect local rule and that the correct local rule did not require citations to the record. Plaintiffs, on their part, failed to note that Federal Rule of Civil Procedure 56 does require record citations. However, Plaintiffs' Memorandum in support of their Motion for Summary Judgment did contain citations to the record, and thus the facts alleged therein were considered by this Court. Any deficiency in Plaintiffs' Designation of Material Facts was harmless, as the Court relied on both parties' factual analysis in their briefs, and the record citations therein.

E.   Motion to Preclude Testimony

Defendant argues that Plaintiffs' proposed expert witness's statement attached to their motion should be precluded as it was not proper expert witness testimony under *Daubert*. The Court does not weigh credibility or decide contested issues of fact on a motion for summary judgment, and therefore the proposed expert's conclusions as to whether the Plaintiffs were exempt were not considered. *See Liberty Lobby*, 477 U.S. at 249-50 (holding that a court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth

20

of the matter, but instead to determine whether there is a genuine issue of triable fact).

      F.      <u>Good Faith Defense to Liquidated Damages</u>

Defendant also argues that because its classification of Plaintiffs as exempt was based on advice given by retained FLSA consultants it was made in good faith. Although the FLSA sets liquidated damages for violations of its overtime payment requirements at an amount equal to the amount of unpaid overtime, there is a so-called "good faith" defense available to employers. 29 U.S.C. §§ 216(b), 260. The defense is available when an "employer shows to the satisfaction of the court that the [failure to pay overtime] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation." 29 U.S.C. § 260. The decision is within the sound discretion of the Court. *Id*; *see also Avitia v. Metropolitan Club of Chicago, Inc*., 49 F.3d 1219 1223 (7th Cir. 1995). The employer bears the burden of proving good faith and reasonable belief. *See Walton v. United Consumers Club, Inc*., 786 F.2d 303, 312 (7th Cir. 1986). The Defendant must "show that it took 'affirmative steps to ascertain FLSA requirements but, nonetheless, violated its provision.'")". *Pautlitz v. City of Naperville*, 874 F. Supp. 833, 835 (N.D. Ill., 1994) (citing *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 1991 U.S. Dist. LEXIS 18087, No. 90 C 7491, 1991 WL 337535, * 8 (N.D. Ill Dec. 26, 1991)). Consulting with experts, reviewing the law, and attending seminars can show good faith. *Pautlitz v. City of Naperville*, 874 F. Supp. at 835; *Doden v. Plainfield Fire Prot. Dist*., No. 94 C 6294, 1995 U.S. Dist. LEXIS 17515, 1995 WL 699719 (N.D. Ill., Nov. 24, 1995) (finding good faith and reasonable belief that defendants were complying with the overtime regulations when they relied on advice of counsel, FLSA handbooks, and discussions with other employers.). Courts "generally appear to have required a showing that the employer received advice on the specific compliance issue in question,

not just that he sought advice about the statute." *Pautlitz*, 874 F. Supp. at 835.

Defendant argues that it is entitled to a finding that it complied with FLSA guidance on how made such a classification and liquidated damages are improper. Plaintiffs argue that Defendant did not act in good faith because it did not circulate its post-FLSA consultant assessment job descriptions to Plaintiffs, and this indicates a lack of full disclosure and transparency. Defendant hired FLSA consultants two times. The first retention resulted in the creation of job descriptions which aligned with duties being performed in the roles, according to the FLSA consultants. The second retention, in 2012, entailed a department wide assessment of whether the supervisor and foreman roles were to be classified as exempt. The FLSA consultants sought written input, in the form of questionnaires, from each Plaintiff. Each Plaintiff answered the questionnaires. That data was then reviewed and used by the FLSA consultants who advised the Defendant that foreman and supervisor positions were exempt. In this case, Defendant engaged in an effort to properly classify the Plaintiffs' roles and relied on professionals to come to its conclusion. Defendant sought advice on the very legal issue in this matter, rather than generalized advice. *Pautlitz*, 874 F. Supp. at 835. Accordingly, Defendant is entitled to the good faith defense. *See Pautlitz,* 874 F. Supp. at 835; *Doden*, 1995 U.S. Dist. LEXIS 17515 at *8-9.

Because there are genuine issues of material fact, particularly whether Plaintiffs' primary duties constituted management, as set forth herein, the Court cannot enter summary judgment on the issue of whether Plaintiffs were properly classified as exempt employees.

## VI.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS in part** Defendant Lake County's Motion for Summary Judgment [DE 105], finding that Lake County Indiana acted in good faith

and reasonably believed it complied with the FLSA in classifying Plaintiffs as exempt employees under the FLSA, **DENIES** the remainder of Lake County's Motion for Summary Judgment, and **DENIES** Motion for Summary Judgment [DE 107] filed by Plaintiffs.

The Court hereby **DENIES** Defendant's Motion to Strike Plaintiffs' Designation of Facts [DE 116] and **DENIES** Defendant's Motion to Preclude the Testimony of Plaintiffs' Expert Witness [DE 118] with leave to refile it at the time of trial.

SO ORDERED this 17th day of March, 2022.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record